HALL, Judge.
These two cases arise out of an automobile accident which occurred on May 18, 1964 in the City of New Orleans between a 1960 Ford sedan owned and operated by Louis G. Floyd, Jr. and a 1961 Ford convertible owned and operated by Anderson Carter, Jr.
One of the suits (our no. 2956) was brought by Floyd against Carter and the latter’s public liability insurer, New Amsterdam Casualty Company, seeking to recover $22,000.00 damages for personal injuries allegedly suffered by him as a result of the accident.
The other (our no. 2957, 209 So.2d 126) is a suit brought by Washington Fire & Marine Insurance Company, Carter’s subrogat-ed collision insurer, and Carter in which they seek judgment against Floyd in the total sum of $778.27 for damages to Carter’s automobile.
The cases were consolidated for trial below and resulted in separate judgments dismissing both suits. The respective plaintiffs lodged separate appeals which were consolidated for hearing in this Court.
The accident occurred on May 18, 1964 at approximately 7:00 A.M. in the intersection of Jackson Avenue and Prytania Street. Jackson Avenue is a two-way street which runs in a river-lake direction and consists of two thirty foot roadways divided by a three foot neutral ground. Prytania Street is a two-way street approximately forty feet wide which runs in an uptown-downtown direction, and intersects Jackson Avenue at right angles. Traffic at the intersection is controlled by automatic traffic lights.
Just prior to the accident Floyd was trav-elling on Jackson Avenue in a direction away from the river while Carter was proceeding downtown on Prytania Street. The collision took place in the lake bound roadway of Jackson Avenue about four to six feet into its intersection with Prytania Street. Each party to the accident contends that he entered the intersection on a green *125 light and that the other party ran a red light.
The Trial Judge based his dismissal of both suits on the ground that the respective plaintiffs had failed to prove their cases by a preponderance of the evidence.
The two drivers, Floyd and Carter, were the only eye witnesses to the accident and their testimony reflects two totally different versions of what occurred. Testimony was also adduced from the police officer who investigated the accident hut since he stated he remembered nothing of the accident even after having read his report to refresh his memory, his testimony is of no value.
The testimony of the two drivers was substantially as follows:
Floyd testified that he was proceeding on Jackson Avenue away from the river in the lane next to the neutral ground at about 15 miles per hour; that when he was about of a block away from Prytania Street he noticed that the traffic light at the intersection was red. As he neared the intersection the light, he said, changed to amber and then when he was approximately twenty-five feet from the intersection it changed to green, whereupon he proceeded into the intersection. He was positive that the light, red when he first saw it, changed to amber as he approached the intersection and then changed to green.
Floyd said that he did not look for any Prytania Street traffic because the light was in his favor when he entered the intersection and he assumed that Prytania Street traffic would have stopped. He said that when the front end of his car was about four or five feet out into the intersection he noticed a “blur” to his left out of the corner of his eye which he assumed to be a travel-ling vehicle and that he put on his brakes, stopping immediately. He testified that at the moment he came to a stop Carter’s car coming from his left on Prytania, struck a scraping blow to the front of his vehicle with its right side. He said that he had no damage which would indicate he struck Carter’s car. He did not see the Carter car before the impact and therefore could not estimate its speed, but testified that after striking him the Carter vehicle proceeded down Prytania Street striking a car parked on the lake side of Prytania Street forty feet away and finally coming to rest two hundred and eighty feet further down the street.
Mr. John F. Exnicious, City Traffic Engineer for the City of New Orleans, had previously testified that the records under his supervision concerning the operation of traffic lights in the city showed that the lights in question at the Jackson Avenue and Prytania Street intersection were functioning properly on the date and at the time of the accident. He further testified that the lights changed in the following sequence: Green, amber, red, green; that a green light first changed to amber (as a warning) and then to red, but that a red light changed directly to green without going through amber.
In spite of having heard Mr. Exnicious’ testimony, Floyd insisted in his morning testimony that the traffic light facing him had changed from red to amber and then to green as he approached Prytania Street. When recalled to the stand after the noon recess Floyd testified that during the recess he had visited the intersection and had determined that Mr. Exnicious was correct. He then explained his previous testimony by saying that he must have been confused by seeing amber on the side of one of the lights facing Prytania Street traffic.
Carter testified he was proceeding downtown in the right lane of Prytania Street and that when he was about half a block from the intersection he noticed the light was red; that he had been travelling about twenty-five to twenty-seven miles per hour (speed limit 30 miles per hour) and upon seeing the red light he cut his speed to about 15 miles per hour, intending to stop. He said that when he was about twenty-five feet from Jackson Avenue the light changed from red to green and he speeded up to about 25 miles per hour and entered the in *126 tersection. At about the time he entered the intersection he observed the Floyd automobile coming from his right on the downtown roadway of Jackson Avenue; that at that time Floyd was about twenty-five feet from the intersection and he expected Floyd to stop because he had the red light against him. However, Floyd did not stop but continued into the intersection and struck his (Carter’s) automobile broadside at the door on the right side. Carter testified that the force of the impact knocked him down underneath the steering wheel whereupon his car travelled uncontrolled and glanced off a vehicle parked to his left about forty feet down Prytania Street and finally came to rest of its own accord about Y of a block away from the intersection. At no time, according to Carter, was he able to apply his brakes. Carter was uninjured. He said the whole front of Floyd’s car was smashed in and that the right side of his own automobile was damaged to the extent of over $700.00.
When asked to estimate the speed of Floyd’s automobile as it approached the intersection Carter stated that it must have been travelling forty or fifty miles per hour to do between $700.00 and $800.00 of damage to his car. It is clear that this estimate of Floyd’s speed was merely an assumption based upon the amount of damage done. However, he later stated flatly in answer to a question by the Court that Floyd’s car was going forty or fifty miles per hour when he first saw it.
Carter testified that when his car came to a stop he walked back to the intersection and spoke to Floyd and that Floyd said he was sorry about the accident but that he could not see the traffic lights because the sun was in his eyes. Floyd denied that he made any such statement.
Our examination of the record convinces us that the testimony of neither of the drivers is reliable. The testimony of both reflects many contradictions and at some points is difficult to believe. They were the only witnesses to the accident and since their testimony reflects two totally different versions of how the accident occurred and since there are no corroborating facts sustaining either version there was no way for the Trial Judge nor is there any way for this Court to determine which driver was at fault in running the red light. The plaintiff in each case must prove his version by a preponderance of the evidence. In the Trial Judge’s opinion the plaintiffs in each of these two cases failed to do so and we find no manifest error in this conclusion. (For a somewhat similar situation see Darouse v. Mamon, La.App., 205 So.2d 127).
For the foregoing reasons the judgment appealed from in the matter entitled “Louis G. Floyd, Jr. vs. Anderson Carter, Jr. and New Amsterdam Casualty Company” being No. 435-919 of the docket of the Civil District Court for the Parish of Orleans (our No. 2956) is affirmed; costs of this appeal to be borne by plaintiff-appellant.
Affirmed.